**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**BANK OF THE OZARKS**                                                                      **PLAINTIFF**

**VS.**                                               **NO. 4:11CV00334**

**CHIRON EQUITIES, LLC; KYLE TAUCH**
**and LOWERY WALTER MCNEIL**                                             **DEFENDANTS**

### ORDER

Pending are motions for summary judgment filed on behalf of Plaintiff, Bank of the Ozarks ("the Bank") and Separate Defendant, Lowery Walter McNeil ("McNeil")(Docket #'s 17 and 23). For the reasons stated herein, the Bank's motion for summary judgment is granted in part and denied in part. McNeil's motion for summary judgment is denied.

Facts

On or about May 28, 2008, the Bank and Separate Defendant Chiron Equities, LLC ("Chiron") entered into an Assignment Agreement ("the Assignment Agreement")[1]. The Assignment Agreement assigned certain equipment finance agreements to Chiron. In exchange for the assignment of the equipment finance agreements, Chiron executed and delivered to the Bank two (2) Promissory Notes ("Promissory Notes") payable to the Bank. The obligations of Chiron under the Assignment Agreement were guaranteed by Separate Defendant Kyle Tauch ("Tauch") pursuant to a Guaranty. One of the Promissory Notes has been modified four times, McNeil was not a party to any of these modifications.

The Bank has executed the assignment pursuant to the Assignment Agreement. Chiron and Kyle Tauch have defaulted on their obligations under the Assignment Agreement, the two

---

[1] Separate Defendant McNeil was not a party to the Assignment Agreement.

(2) Promissory Notes and the Guaranty. Pursuant to the terms of the Assignment Agreement and the two (2) Promissory Notes, the Bank has declared all unpaid payments to be immediately due and payable. The Bank states that the amount due and owing from Chiron and Kyle Tauch, jointly and severally is $434,424.56. Chiron and Tauch deny that this amount is accurate.

Congress Materials LLC ("Congress")[2] executed and delivered three Equipment Finance Agreements ("Equipment Finance Agreements") to the Bank. Pursuant to the terms of the Equipment Finance Agreements, Congress agreed to make certain payments to the Bank. Each of the three Equipment Finance Agreements contained a Guaranty signed by Tauch. Each of the three Equipment Finance Agreements were modified twice and these modifications were signed by Tauch in his individual capacity. The Bank claims to have fully performed its obligations under the three Equipment Finance Agreements. It is undisputed that the payments of Congress and Tauch are not current. The Bank has declared all unpaid payments due under the Equipment Finance Agreements and claims that the amount due and owing from Tauch is $132,350.02. Tauch denies that this amount is accurate.

On or about June 20, 2007, McNeil, as Chief Executive Officer of Green Aggregates, Inc., executed an Equipment Finance Agreement ("Equipment Finance Agreement No. 1") in favor of the Bank. As a separate agreement, McNeil executed a personal Guaranty related to the obligations of Green Aggregates under Equipment Finance Agreement No. 1. Equipment Finance Agreement No. 1 was modified on or about July 13, 2007. On or about October 18, 2007, McNeil, as Chief Executive Officer of Green Aggregates, Inc., executed an Equipment

---

[2]The Bank represents that Congress is not a party to this proceeding due to its pending Chapter 11 bankruptcy case.

Finance Agreement ("Equipment Finance Agreement No. 2") in favor of the Bank. As a separate agreement, McNeil executed a personal Guaranty related to the obligations of Green Aggregates under Equipment Finance Agreement No. 2. Equipment Finance Agreements 1 and 2 are the finance agreements which were assigned to Chiron pursuant to the Assignment Agreement discussed herein.

The Bank argues that pursuant to the Assignment Agreement, Chiron gave the Bank a security interest in Equipment Finance Agreements 1 and 2 including all guaranties and other supporting obligations. The Assignment Agreement also states that all amounts due with respect to the Equipment Finance Agreements shall be payable exclusively to the Bank. The Bank claims to be in possession of Equipment Finance Agreement 1 and 2. The Bank argues that since Chiron has defaulted on its payment obligations to the Bank it is entitled to all the rights of Chiron as the owner and holder of the Equipment Finance Agreements. The Bank seeks to collect payments due under the Equipment Finance Agreements from the original debtors. The Bank seeks recovery from Chiron, which it claims is formerly Green Aggregates, Inc., and McNeil. McNeil argues that the Bank's interest in his personal guaranties was extinguished upon the Bank's assignment of the Finance Agreements to Chiron. Further, McNeil denies that Green Aggregates, Inc. is now known as Chiron. The Bank has made demand on McNeil for the total amount due of $434,424.56, jointly and severally, to the obligations of Chiron and Tauch.

In addition to McNeil's argument that the Bank's interest in his personal guaranty was extinguished upon the Bank's assignment of the Finance Agreements to Chiron, McNeil claims that he was released from any and all claims arising from the guaranties at issue herein. McNeil

3

claims that on or about March 25, 2008, Congress Materials, LLC ("Congress"), an affiliate of Chiron, entered into a Consulting Agreement with McNeil securing his services as a consultant from March 2008 through August 2008. In consideration for McNeil's services as a consultant to Congress, Chiron agreed that, upon McNeil's successful completion of the Consulting Agreement, Chiron would release McNeil from any and all claims and causes of action arising from or related to the Guaranties relevant to this matter. On or about September 1, 2008, Chiron executed a Release of Guaranty in favor or McNeil. McNeil argues that this Release effectively absolved McNeil from any and all Guaranties previously made. The Bank argues that this Release is void and unenforceable.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

## Discussion

It is undisputed that Chiron and Tauch are in default under the Assignment Agreement as alleged in Count 1 of the Bank's complaint. Although Defendants generally dispute that the amount owed under the Agreement, $434,424.56, as averred by Alan Dobbins, the Vice President of Bank of the Ozarks Leasing Division, they fail to offer any documentation to support their denial by affidavit or other supporting proof. The Court finds that Defendant's have failed to meet "proof with proof" as required by both Fed. R. Civ. P. 56(e) and Ark. R. Civ. P. 56(e). *See, Killian v. Gibson*, 2012 Ark. App. 299, ___ S.W.3d, ___,(Ark. App., 2012), *Dillard v. Resolution Trust Co.*, 308 Ark. 357, 824 S.W.2d 387 (1992). Accordingly, Plaintiff's motion for summary judgment is GRANTED on Count I of Plaintiff's complaint. Judgment will be entered in favor of Plaintiff in the amount of $434,424.56 of and from Separate Defendants

Chevron and Tauch, jointly and severally.

It is also undisputed that Tauch is in default under the three Equipment Finance Agreements as alleged in Count 2 of the Bank's complaint. Although Tauch generally disputes that the amount owed under the Agreements, $132,350.02, as averred by Alan Dobbins, the Vice President of Bank of the Ozarks Leasing Division, he fails to offer any documentation to support his denial by affidavit or other supporting proof. The Court finds that Tauch has failed to meet "proof with proof" as required by both Fed. R. Civ. P. 56(e) and Ark. R. Civ. P. 56(e). *See, Killian v. Gibson*, 2012 Ark. App. 299, ___ S.W.3d, ___,(Ark. App., 2012), *Dillard v. Resolution Trust Co.*, 308 Ark. 357, 824 S.W.2d 387 (1992). Accordingly, Plaintiff's motion for summary judgment is GRANTED on Count 2 of Plaintiff's complaint. Judgment will be entered in favor of Plaintiff in the amount of $132,350.02 of and from Separate Defendant Tauch.

The Court finds that questions of fact preclude the entry of summary judgment in favor of the Bank as to its claims against McNeil. Likewise, questions of fact preclude the entry of summary judgment in favor of McNeil. Specifically, the Court finds the following questions of fact preclude the entry of summary judgment on these claims:

1. Whether the guaranties at issue are assignable without the guarantor's consent;
2. If the guaranties are assignable, were they extinguished by the assignment in this case;
3. Whether the language relied upon by the Bank in the Assignment Agreement meets the requirements under Arkansas law for the reservation, attachment and enforcement of a security interest; and
4. The effect, if any, of the Release of Guaranty.

Wherefore, the Bank's motion for summary judgment is granted as to its claims against Chiron and Tauch; the Bank's motion for summary judgment is denied as to its claims against

McNeil and McNeil's motion for summary judgment is denied.

    IT IS SO ORDERED this 10th day of August, 2012.


                                                             _____
                                                             James M. Moody
                                                             United States District Judge