FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 0 4 2015

JAMES W. McCORMACK, CLERK
By: _____
                        DEP CLERK

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**BANK OF THE OZARKS**                                                  **PLAINTIFF**

**v.**                                            **CASE NO. 4:11-CV-334 JMM**

**CHIRON EQUITIES, LLC; KYLE TAUCH;**
**and LOWERY WALTER MCNEIL**                                **DEFENDANTS**

## MOTION TO REOPEN THE CASE AND SUBSTITUTE PARTIES
## IN ORDER TO ENTER FINAL JUDGMENT AS TO KYLE TAUCH

COMES NOW Virginia Angel, Trustee of the Gobsmack Gift Trust ("Angel"), by and through counsel, Eichenbaum Liles P.A., and in support of her Motion to Reopen the Case and Substitute Parties in Order to Enter Final Judgment as to Kyle Tauch, only, states:

1.      On or about February 14, 2011, Bank of the Ozarks (the "Bank") commenced the Litigation by filing a Complaint in the Circuit Court of Pulaski County, Arkansas against Chiron Equities, LLC ("Chiron") and Kyle Tauch ("Tauch") alleging non-payment by Chiron of two (2) promissory notes owed to the Bank arising from the Bank's financial sale and assignment of three (3) Equipment Finance Agreements to Chiron that were guaranteed by Tauch.

2.      The Litigation was removed to this Court pursuant to a Notice of Removal filed on April 18, 2011.

3.      On or about June 10, 2011, the Bank filed an Amended Complaint [Docket no. 11] re- alleging the allegations against Chiron and Tauch and adding a count against Lowery Walter McNeil ("McNeil"), a guarantor on the underlying Equipment Finance Agreements, which, upon default by Chiron was now collectable by the Bank.

4.      On or about January 4, 2012, the Bank filed a Motion for Summary Judgment [Docket no. 17] against each of the Defendants: Chiron, Tauch, and McNeil. McNeil in turn, filed his own Motion for Summary Judgment.

5.      On August 10, 2012, the Court entered its Order [Docket no. 41] in the Litigation granting the Bank a Judgment on Count I of the Amended Complaint in the amount of $434,424.56 against Chiron and Tauch jointly and severally, and from Tauch only an additional Judgment on the allegations in Count II in the amount of $132,350.02. The Court also determined t h a t material facts remained in dispute as to the allegations against McNeil (the "Partial S u m m a r y  J u d g m e n t  O r d e r"). A copy of the "Partial Summary Judgment O r d e r" is attached as **Exhibit "A"** and incorporated herein.

6.      Thereafter, the Bank and McNeil entered into a Settlement and Forbearance Agreement which requires certain undertakings by McNeil, t h o s e undertakings have now been completed and any further obligation by McNeil to the Bank arising from the facts set forth in the Amended Complaint as to McNeil have been extinguished. As part of the Settlement Agreement, McNeil executed and delivered to the Bank a Consent Judgment which McNeil agreed could be filed by the Bank in the event that he breached the Settlement Agreement.

7.      In conjunction with, and recognition of, the Settlement Agreement, the Court in this Litigation entered a second Order [Docket no. 46] on or about February 8, 2013 dismissing the case while retaining "jurisdiction to reopen the case" (the Dismissal Order"). A copy of the "Dismissal Order" is attached hereto as **Exhibit "B"** and incorporated herein.

8.      Thereafter, on or about August 1, 2014, the Bank and Virginia Angel, Trustee for the Gobsmack Gift Trust, entered into that certain Assignment of Claims and Causes of

2

Action (the "Claims Assignment") whereby the Bank assigned and transferred all of its interest in certain claims pursued in the Litigation as more clearly specified therein. A copy of the Claims Assignment is attached hereto as **Exhibit "C"** and incorporated herein.

9.    Paragraph 1(c) of the Claims Assignment states that among the rights of the Bank assigned to the Trust is "any right to obtain a final judgment against Tauch and/or Chiron in the Lawsuit based upon the Partial Summary Judgment Order and/or the findings and conclusions set forth therein and all rights relating to or arising from any such final judgment entered against Tauch or Chiron in the lawsuit, including, without limitation, all rights to collect such judgment by, *inter alia,* perfecting one or more judgment liens, obtaining writs of execution or writs of garnishment, or obtaining one or more turnover orders." Virginia Angel, Trustee for the Gobsmack Gift Trust, should be substituted as the party Plaintiff in this case.

10.    Defendant Chiron is a debtor in a Chapter 7 bankruptcy pending in the Southern District of Texas styled as follows: *In re Chiron Equities, LLC, Case No. 14-34031* in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Proceeding"). The movant seeks to reopen this case for the sole purpose of prosecuting the claims against Tauch and seeks no relief as against Chiron. The movant was granted relief from the automatic stay in order to reopen the lawsuit for the purpose of prosecuting its claims against Tauch to judgment. A copy of the Order Granting Motion for Relief from the Automatic Stay by the Gobsmack Gift Trust is attached hereto as Exhibit "D" and incorporated herein. The claims against Chiron in this case should be severed and no action shall be taken to prosecute such claims as against Chiron except upon obtaining appropriate relief from the automatic stay.

3

11.     In light of the Bankruptcy Proceeding and, as a result of McNeil fulfilling his undertakings pursuant to the Settlement Agreement, Angel is entitled to have the case re-opened for the purpose of entering a Final Judgment for purpose of Fed. R. Civ. P. 54(b) and 58 dismissing the claim as to McNeil with prejudice and entering Judgment as to Kyle Tauch only under Fed. R. Civ. P. 54(b) and 58 consistent with the Partial Summary Judgment Order.

WHEREFORE, premises considered Angel prays that the Court substitute Virginia Angel, Trustee of the Gobsmack Gift Trust, for Bank of the Ozarks as the Plaintiff, and that the Court re-open the case for purposes of entering a final judgment pursuant to Fed. R. Civ. P. 58 dismissing all claims against Lowery Walter McNeil with prejudice pursuant to the Settlement Agreement and entering judgment as to Kyle Tauch only consistent with the Order Granting Partial Summary Judgment entered on August 10, 2012; and for all other relief as to which Angel is entitled as the assignee of the interest of the Bank of the Ozarks in the claims raised in the Litigation.

RESPECTFULLY SUBMITTED,

EICHENBAUM LILES P.A.
124 West Capitol, Suite 1900
Little Rock, Arkansas 72201
(501) 978-4484
(501) 376-8433 facsimile

By: _____
Christopher O. Parker ABN#75099
*Attorneys for Gobsmack Gift Trust*

4

## CERTIFICATE OF SERVICE

I, Christopher O. Parker, do hereby certify that a true and correct copy of the foregoing document has been provided to the person(s) listed below by email and depositing same into the U.S. Mail, postage pre-paid this ___5___ day of February, 2015.

David W. Sterling
Cox, Sterling & McClure, PLLC
87112 Counts Massie Road
North Little Rock, AR 72113

Mitchell L. Berry
Dyke & Winzerling, PLC
415 N. McKinley Street
Little Rock, AR 72205

Christopher O. Parker

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BANK OF THE OZARKS                                        PLAINTIFF

VS.                                    NO.  4:11CV00334

CHIRON EQUITIES, LLC; KYLE TAUCH
and LOWERY WALTER MCNEIL                                  DEFENDANTS

<u>ORDER</u>

Pending are motions for summary judgment filed on behalf of Plaintiff, Bank of the

Ozarks ("the Bank") and Separate Defendant, Lowery Walter McNeil ("McNeil")(Docket #'s 17

and 23).  For the reasons stated herein, the Bank's motion for summary judgment is granted in

part and denied in part.  McNeil's motion for summary judgment is denied.

<u>Facts</u>

On or about May 28, 2008, the Bank and Separate Defendant Chiron Equities, LLC

("Chiron") entered into an Assignment Agreement ("the Assignment Agreement")[1].  The

Assignment Agreement assigned certain equipment finance agreements to Chiron.  In exchange

for the assignment of the equipment finance agreements, Chiron executed and delivered to the

Bank two (2) Promissory Notes ("Promissory Notes") payable to the Bank.  The obligations of

Chiron under the Assignment Agreement were guaranteed by Separate Defendant Kyle Tauch

("Tauch") pursuant to a Guaranty.  One of the Promissory Notes has been modified four times,

McNeil was not a party to any of these modifications.

The Bank has executed the assignment pursuant to the Assignment Agreement.  Chiron

and Kyle Tauch have defaulted on their obligations under the Assignment Agreement, the two

---

[1]Separate Defendant McNeil was not a party to the Assignment Agreement.



(2) Promissory Notes and the Guaranty. Pursuant to the terms of the Assignment Agreement and the two (2) Promissory Notes, the Bank has declared all unpaid payments to be immediately due and payable. The Bank states that the amount due and owing from Chiron and Kyle Tauch, jointly and severally is $434,424.56. Chiron and Tauch deny that this amount is accurate.

Congress Materials LLC ("Congress")[2] executed and delivered three Equipment Finance Agreements ("Equipment Finance Agreements") to the Bank. Pursuant to the terms of the Equipment Finance Agreements, Congress agreed to make certain payments to the Bank. Each of the three Equipment Finance Agreements contained a Guaranty signed by Tauch. Each of the three Equipment Finance Agreements were modified twice and these modifications were signed by Tauch in his individual capacity. The Bank claims to have fully performed its obligations under the three Equipment Finance Agreements. It is undisputed that the payments of Congress and Tauch are not current. The Bank has declared all unpaid payments due under the Equipment Finance Agreements and claims that the amount due and owing from Tauch is $132,350.02. Tauch denies that this amount is accurate.

On or about June 20, 2007, McNeil, as Chief Executive Officer of Green Aggregates, Inc., executed an Equipment Finance Agreement ("Equipment Finance Agreement No. 1") in favor of the Bank. As a separate agreement, McNeil executed a personal Guaranty related to the obligations of Green Aggregates under Equipment Finance Agreement No. 1.    Equipment Finance Agreement No. 1 was modified on or about July 13, 2007. On or about October 18, 2007, McNeil, as Chief Executive Officer of Green Aggregates, Inc., executed an Equipment

---

[2]The Bank represents that Congress is not a party to this proceeding due to its pending Chapter 11 bankruptcy case.

2

Finance Agreement ("Equipment Finance Agreement No. 2") in favor of the Bank.  As a

separate agreement, McNeil executed a personal Guaranty related to the obligations of Green

Aggregates under Equipment Finance Agreement No. 2.  Equipment Finance Agreements 1 and

2 are the finance agreements which were assigned to Chiron pursuant to the Assignment

Agreement discussed herein.

The Bank argues that pursuant to the Assignment Agreement, Chiron gave the Bank a

security interest in Equipment Finance Agreements 1 and 2 including all guaranties and other

supporting obligations.  The Assignment Agreement also states that all amounts due with respect

to the Equipment Finance Agreements shall be payable exclusively to the Bank.  The Bank

claims to be in possession of Equipment Finance Agreement 1 and 2. The Bank argues that since

Chiron has defaulted on its payment obligations to the Bank it is entitled to all the rights of

Chiron as the owner and holder of the Equipment Finance Agreements.  The Bank seeks to

collect payments due under the Equipment Finance Agreements from the original debtors.  The

Bank seeks recovery from Chiron, which it claims is formerly Green Aggregates, Inc., and

McNeil.  McNeil argues that the Bank's interest in his personal guaranties was extinguished

upon the Bank's assignment of the Finance Agreements to Chiron.  Further, McNeil denies that

Green Aggregates, Inc. is now known as Chiron.  The Bank has made demand on McNeil for

the total amount due of $434,424.56, jointly and severally, to the obligations of Chiron and

Tauch.

In addition to McNeil's argument that the Bank's interest in his personal guaranty was

extinguished upon the Bank's assignment of the Finance Agreements to Chiron, McNeil claims

that he was released from any and all claims arising from the guaranties at issue herein.  McNeil

3

claims that on or about March 25, 2008, Congress Materials, LLC ("Congress"), an affiliate of

Chiron, entered into a Consulting Agreement with McNeil securing his services as a consultant

from March 2008 through August 2008. In consideration for McNeil's services as a consultant

to Congress, Chiron agreed that, upon McNeil's successful completion of the Consulting

Agreement, Chiron would release McNeil from any and all claims and causes of action arising

from or related to the Guaranties relevant to this matter. On or about September 1, 2008, Chiron

executed a Release of Guaranty in favor or McNeil. McNeil argues that this Release effectively

absolved McNeil from any and all Guaranties previously made. The Bank argues that this

Release is void and unenforceable.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial

courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining
> whether there is a need for trial -- whether, in other words, there
> are any genuine factual issues that properly can be resolved only
> by a finder of fact because they may reasonably be resolved in
> favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a

4

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact. It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion. Once this is done, his burden is
> discharged, and, if the record in fact bears out the claim that no
> genuine dispute exists on any material fact, it is then the
> respondent's burden to set forth affirmative evidence, specific
> facts, showing that there is a genuine dispute on that issue. If the
> respondent fails to carry that burden, summary judgment should be
> granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

### Discussion

It is undisputed that Chiron and Tauch are in default under the Assignment Agreement as

alleged in Count 1 of the Bank's complaint. Although Defendants generally dispute that the

amount owed under the Agreement, $434,424.56, as averred by Alan Dobbins, the Vice

President of Bank of the Ozarks Leasing Division, they fail to offer any documentation to

support their denial by affidavit or other supporting proof. The Court finds that Defendant's

have failed to meet "proof with proof" as required by both Fed. R. Civ. P. 56(e) and Ark. R. Civ.

P. 56(e). *See, Killian v. Gibson*, 2012 Ark. App. 299, ___ S.W.3d, ___,(Ark. App., 2012),

*Dillard v. Resolution Trust Co.*, 308 Ark. 357, 824 S.W.2d 387 (1992). Accordingly, Plaintiff's

motion for summary judgment is GRANTED on Count I of Plaintiff's complaint. Judgment will

be entered in favor of Plaintiff in the amount of $434,424.56 of and from Separate Defendants

Chevron and Tauch, jointly and severally.

It is also undisputed that Tauch is in default under the three Equipment Finance

Agreements as alleged in Count 2 of the Bank's complaint. Although Tauch generally disputes

that the amount owed under the Agreements, $132,350.02, as averred by Alan Dobbins, the Vice

President of Bank of the Ozarks Leasing Division, he fails to offer any documentation to support

his denial by affidavit or other supporting proof. The Court finds that Tauch has failed to meet

"proof with proof" as required by both Fed. R. Civ. P. 56(e) and Ark. R. Civ. P. 56(e). *See,*

*Killian v. Gibson,* 2012 Ark. App. 299, ___ S.W.3d, ___,(Ark. App., 2012), *Dillard v.*

*Resolution Trust Co.,* 308 Ark. 357, 824 S.W.2d 387 (1992). Accordingly, Plaintiff's motion for

summary judgment is GRANTED on Count 2 of Plaintiff's complaint. Judgment will be entered

in favor of Plaintiff in the amount of $132,350.02 of and from Separate Defendant Tauch.

The Court finds that questions of fact preclude the entry of summary judgment in favor of

the Bank as to its claims against McNeil. Likewise, questions of fact preclude the entry of

summary judgment in favor of McNeil. Specifically, the Court finds the following questions of

fact preclude the entry of summary judgment on these claims:

> 1. Whether the guaranties at issue are assignable without the guarantor's consent;
> 2. If the guaranties are assignable, were they extinguished by the assignment in this case;
> 3. Whether the language relied upon by the Bank in the Assignment Agreement meets the requirements under Arkansas law for the reservation, attachment and enforcement of a security interest; and
> 4. The effect, if any, of the Release of Guaranty.

Wherefore, the Bank's motion for summary judgment is granted as to its claims against

Chiron and Tauch; the Bank's motion for summary judgment is denied as to its claims against

6

McNeil and McNeil's motion for summary judgment is denied.

IT IS SO ORDERED this 10th day of August, 2012.


James M. Moody
United States District Judge

7

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 08 2013

IN THE UNITED STATES DISTRICT COURT JAMES W. McCORMACK, CLERK
EASTERN DISTRICT OF ARKANSAS   By: _____
WESTERN DIVISION                              DEP CLERK

BANK OF THE OZARKS                                                    **PLAINTIFF**

v.                               CASE NO. 4:11-CV-334 JMM

CHIRON EQUITIES, LLC; KYLE TAUCH;
and LOWERY WALTER McNEIL                                     **DEFENDANTS**

### ORDER

Now on this day, comes to be heard Plaintiff, Bank of the Ozarks, by and through its undersigned attorneys, and Separate Defendant, Lowery Walter McNeil, by and through his undersigned attorneys. From the matters presented to the Court, the Court finds as follows:

1. The parties have entered into a Settlement Agreement regarding this case, the terms of which may require entry of a Consent Judgment in the future.

2. Upon agreement of the parties, this case shall be dismissed with the Court retaining jurisdiction in order to reopen the case should the entry of a Consent Judgment be necessary pursuant to the parties' Settlement Agreement.

IT IS THEREFORE ORDERED AND ADJUDGED, that this matter is dismissed, but this Court retains jurisdiction to reopen this case should the entry of a Consent Judgment be necessary pursuant to the parties' Settlement Agreement.

IT IS SO ORDERED.

**EXHIBIT**

**B**

The Honorable James M. Moody
United States District Judge

Date: 2/48/13

APPROVED AS TO FORM:

EICHENBAUM LILES P.A.
124 West Capitol Avenue, Suite 1900
Little Rock, AR 72201
Ph: 501-376-4531 – Fax: 501-376-8433

By: _____
Mitchell L. Berry, ABN 99088
*Attorney for Bank of the Ozarks*


Cox, Sterling & McClure, PLLC
8712 County Mastic Road
North Little Rock, AR 72113

By: _____
David W. Sterling, ABN 97182
*Attorney for Lowery Walter McNeil*

2

## ASSIGNMENT OF CLAIMS AND CAUSES OF ACTION

### Parties

A.    The parties to this Assignment of Claims and Causes of Action ("Assignment")

are as follows:

(i)    Bank of the Ozarks (the "Bank"); and

(ii)    Virginia Angel, Trustee of The Gobsmack Gift Trust created under

agreement dated $\underline{MAY \quad 29 \quad, 2012}$ ("Assignee").

### Recitals and Definitions

B.    The Bank previously brought suit to collect certain claims against Chiron

Equities, LLC ("Chiron"), Kyle Tauch ("Tauch"), and Lowery Walter McNeil ("McNeil" and,

collectively with Chiron and Tauch, "Defendants") in the following lawsuit ("Lawsuit"):

> *Bank of the Ozarks v. Chiron Equities, LLC, Kyle Tauch, and Lowery Walter*
> *McNeil; Case No. 4:11CV00334 in the United States District Court for the*
> *Eastern District of Arkansas, Western Division*

C.    On or about August 10, 2012, an Order was entered in the Lawsuit granting the

Bank's motion for summary judgment against Chiron and Tauch and awarding the Bank

damages as follows:

(1)    $434,424.56 against Chiron and Tauch, jointly and severally, on Count 1
of the Bank's complaint.

(2)    $132,350.02 against Tauch individually on Count 2 of the Bank's
complaint.

References in this Assignment to the "Order" shall refer to the above-referenced Order entered

in the Lawsuit granting the Bank's motion for summary judgment as the same may be hereafter

amended or supplemented.  References in this Assignment to the "Lawsuit Claims" shall include

all claims and causes of action asserted by the Bank in the Lawsuit against any defendant

therein.

D.    References in this Assignment to the "Tauch Claims" shall refer to all claims,

causes of action, judgments, and/or rights to payment of any kind held by the Bank against

**Assignment of Claims and Causes of Action**                     **Page 1 of 8**



EXHIBIT
C

Tauch, including, without limitation, all claims, causes of action, and/or rights to payment arising from, related to, associated with, or asserted in the Lawsuit and/or the Order, together with any liens, security interests, or other interests in any collateral securing all or any part of such claims, causes of action, judgments, and/or rights to payment.

E.      References in this Assignment to the "Chiron Claims" shall refer to all claims, causes of action, judgments, and/or rights to payment of any kind held by the Bank against Chiron, including, without limitation, all claims, causes of action, and/or rights to payment arising from, related to, associated with, or asserted in the Lawsuit and/or the Order, together with any liens, security interests, or other interests in any collateral securing all or any part of such claims, causes of action, judgments, and/or rights to payment.

F.      In addition, the Bank is the holder of certain claims against Congress Materials, LLC ("Congress"). References in this Assignment to the "Congress Claims" shall refer to all claims, causes of action, judgments, and/or rights to payment of any kind held by the Bank against Congress, including, without limitation, all claims and rights to payment asserted by the Bank in Proof of Claim No. 18-1 (the "Proof of Claim") filed on or about December 21, 2010, in Congress' previous chapter 11 bankruptcy case styled as follows: *In re Congress Materials, LLC*; Case No. 10-37526 in the U.S. Bankruptcy Court for the Northern District of Texas and all claims arising from any documents attached to the Proof of Claim,[1] together with any liens, security interests, or other interests in any collateral securing all or any part of such claims, causes of action, judgments, and/or rights to payment.

G.      The Bank has agreed to sell and assign, and Assignee has agreed to purchase, the Tauch Claims, the Chiron Claims, the Lawsuit Claims, and the Congress Claims all in accordance with the terms and conditions of this Assignment.

---

[1] This shall specifically include the indebtedness owed by Congress to the Bank pursuant to the three (3) separate Equipment Finance Agreements designated as Contract No. 3090.2, Contract No. 3090.3, and Contract No. 3090.5 and the Contract Modification Agreement and Second Contract Modification Agreement executed in connection therewith, all of which were attached to the Proof of Claim.

**Assignment of Claims and Causes of Action**                              **Page 2 of 8**

### Covenants and Agreements

NOW, THEREFORE, for value received, the receipt and sufficiency of which is hereby acknowledged, the Bank and Assignee have agreed as follows:

1.     The Bank hereby unconditionally assigns to Assignee the following:

    (a)     the Tauch Claims;

    (b)     the Chiron Claims;

    (c)     all rights, claims, and/or causes of action giving rise to, associated with, related to, or arising from the Order, including, without limitation, any right to obtain a final judgment against Tauch and/or Chiron in the Lawsuit based upon the Order and/or the findings and conclusions set forth therein and all rights relating to or arising from any such final judgment entered against Tauch or Chiron in the Lawsuit, including, without limitation, all rights to collect such judgment by, *inter alia*, perfecting one or more judgment liens, obtaining writs of execution or writs of garnishment, or obtaining one or more turnover orders;

    (d)     the Congress Claims, including any liens, security interests, or other interests in any collateral securing such claims, causes of action, judgments, and/or rights to payment;

    (e)     all claims, causes of action, judgments, or other rights to payment of any kind held by Bank against any guarantor or co-debtor of any debt comprising the Congress Claims, including, without limitation, Tauch and Chiron; and

    (f)     the Lawsuit Claims.

The purchase price for the foregoing rights and claims is $25,000.00 ("Purchase Price"), and shall be payable by wire transfer of immediately available funds to Bank on or before the Effective Date (set forth in paragraph 12 below).

2.     The rights and claims transferred by Bank to Assignee pursuant to paragraph 1 above, including the Tauch Claims, Chiron Claims, the Lawsuit Claims, and the Congress

Assignment of Claims and Causes of Action                    Page 3 of 8

Claims, are transferred WITHOUT RECOURSE, REPRESENTATION OR ANY WARRANTY, EITHER EXPRESS OR IMPLIED, except as expressly set forth in paragraph 6 below.

3.  The Bank will hereafter execute and deliver to Assignee all documents for filing in the Lawsuit reasonably necessary to evidence the assignment of the Tauch Claims and Chiron Claims from Bank to Assignee, including, without limitation, a stipulation or other appropriate document acknowledging the transfer of the Tauch Claims, Chiron Claims, and Lawsuit Claims to Assignee and/or any other documents as may be required under Rule 25 of the Federal Rules of Civil Procedure.

4.  Provided satisfactory arrangements are made by Assignee with Eichenbaum Liles P.A., the Bank hereby consents and grants permission to the law firm of Eichenbaum Liles P.A. to represent Assignee for the limited purpose of taking any and all necessary and appropriate steps to obtain the entry of a final judgment in the Lawsuit based upon the findings and conclusions in the Order, including, without limitation, filing a motion to re-open the Lawsuit, a notice of substitution of parties, and a motion for entry of final judgment, and hereby waives any potential or actual conflict of interest that may arise from such representation. For the avoidance of doubt, Assignee acknowledges and agrees that Eichenbaum Liles P.A. may continue to represent Bank in any and all other matters, and hereby waives any potential or actual conflict of interest that may arise from such representation.

5.  To the extent any of the Congress Claims or Lawsuit Claims are evidenced by, or reflected in, a note or other negotiable instrument, Bank shall endorse and deliver all such instruments to Assignee without recourse, representation or warranty, except for the express, limited warranty that Bank is the holder and owner thereof. All other documents evidencing, reflecting or forming the basis of any portion of the Congress Claims or the guaranties of the Congress Claims shall be delivered to Assignee.

6.    The Bank hereby warrants and represents to the Assignee that:

(a)    The Bank is the present owner and holder of the Tauch Claims, the Chiron Claims, and the Congress Claims, and has not transferred or assigned its respective interests therein;

(b)    No payment has been made on the Tauch Claims, the Chiron Claims, or the Lawsuit Claims through the date of this Assignment other than payments totaling $25,000 paid by McNeil between February 2013 and August 2013; and

(c)    Scott Hastings has the authority to execute this Assignment on behalf of the Bank.

WITHOUT IN ANY WAY LIMITING THE FOREGOING EXPRESS, LIMITED REPRESENTATIONS AND WARRANTIES OF BANK, BANK HAS NOT MADE, DOES NOT MAKE AND HEREBY SPECIFICALLY NEGATES AND DISCLAIMS ANY AND ALL REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTEES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE OF, AS TO, CONCERNING OR WITH RESPECT TO THE TAUCH CLAIMS, THE CHIRON CLAIMS, THE ORDER, THE LAWSUIT CLAIMS, OR THE CONGRESS CLAIMS, INCLUDING, WITHOUT LIMITATION, COLLECTIBILITY, CREDITWORTHINESS, VALIDITY OR ENFORCEABILITY, NON-EXISTENCE OF OFFSETS OR DEFENSES.  THE PROVISIONS OF THIS PARAGRAPH 6 SHALL SURVIVE THE CLOSING OF THE TRANSACTIONS CONTEMPLATED BY THIS ASSIGNMENT.

7.    Assignee shall be fully and completely subrogated in and to all rights of the Bank relating to or arising from the Order, the Tauch Claims, the Chiron Claims, the Lawsuit Claims, and the Congress Claims.

8.    ASSIGNEE, TOGETHER WITH JAY H. KRASOFF, JOINTLY AND SEVERALLY, HEREBY AGREE TO INDEMNIFY, DEFEND AND HOLD HARMLESS BANK AND ITS

PARENTS, SUBSIDIARIES, AFFILIATES, HOLDING COMPANIES, OFFICERS, DIRECTORS,

SHAREHOLDERS, EMPLOYEES, AGENTS, REPRESENTATIVES AND ATTORNEYS, FROM

AND AGAINST ANY AND ALL LOSS, LIABILITY, CLAIM, JUDGMENT, DAMAGE AND

EXPENSE WHATSOEVER (INCLUDING REASONABLE ATTORNEY'S FEES AND AMOUNTS

PAID IN SETTLEMENT) DIRECTLY OR INDIRECTLY ARISING OUT OF, BASED UPON,

RESULTING FROM OR OTHERWISE RELATING TO ANY ENFORCEMENT ACTION TAKEN

BY ASSIGNEE OR ANY OF ITS BENEFICIARIES, SUCCESSORS OR ASSIGNS IN

CONNECTION WITH THE TAUCH CLAIMS, THE CHIRON CLAIMS, THE ORDER, THE

LAWSUIT CLAIMS, OR THE CONGRESS CLAIMS SAVE AND EXCEPT THOSE CLAIMS

RESUTLTING FROM A MATERIAL INACCURACY OR BREACH OF BANK'S EXPRESS

REPRESENTATIONS OR WARRANTIES SET FORTH IN PARAGRAPH 6 ABOVE.

9.      Bank and Assignee shall each pay their own fees and expenses (including

attorneys' fees) in connection with this Assignment.

10.     Notwithstanding any provision in this Assignment to the contrary, should Bank for

any reason ever become liable to Assignee under any circumstances for any claim, loss, cost,

damage, expense or other liability of any kind (including reasonable attorneys' fees)

(collectively, the "Liability"), then Assignee's sole and exclusive remedy against Bank for such

Liability shall not under any circumstances whatsoever exceed the Purchase Price; provided,

however, Assignor shall have no liability to Assignee, if Assignee has taken any action, or

omitted to take any action, the consequences of which are to materially alter or amend, or to

compromise, impair or otherwise adversely affect, any of the rights and claims hereby assigned.

This Paragraph 10 shall expressly survive the closing of the transactions contemplated by this

Assignment and/or any termination of this Assignment.

11.     The Bank agrees to execute and deliver to Assignee all such other and additional

documents, if any, as may be reasonably requested by Assignee to evidence, perfect or

effectuate the assignments and subrogation rights set forth herein.

**Assignment of Claims and Causes of Action**                                    **Page 6 of 8**

12.    The effective date ("Effective Date") of this Assignment is August ___1___, 2014.

BANK OF THE OZARKS

By:_____
Scott Hastings
President, Leasing Division

THE GOBSMACK GIFT TRUST

By:_____
Virginia Angel, Trustee

_____
Jay Hilasof
For purposes of paragraph 8 only.

**Assignment of Claims and Causes of Action**          **Page 7 of 8**

## Acknowledgments

STATE OF ARKANSAS

COUNTY OF PULASKI

This instrument was acknowledged before me on the __1__ day of August, 2014, by Scott Hastings, President, Leasing Division of Bank of the Ozarks, a state chartered banking association, on behalf of said bank.

In witness whereof I hereunto set my hand and official seal.

_Teri J. Mallion_
Notary Public

Printed Name: _Teri J. Mallion_

My Commission Expires:

_6-10-23_

TERI J. MALLION
Comm. No. 12369000
NOTARY
PUBLIC
My Comm. Exp. 06-10-2023
PULASKI CO., ARKANSAS

STATE OF TEXAS              §
                           §
COUNTY OF HARRIS           §

    This instrument was acknowledged before me on the __1st__ day of August, 2014 by Virginia C. Angel as the Trustee of The Gobsmack Gift Trust.


MARLENE A. SCANLIN
MY COMMISSION EXPIRES
February 11, 2017

_Marlene Scanlin_
Notary Public, State of Texas

STATE OF TEXAS              §
                           §
COUNTY OF HARRIS           §

    This instrument was acknowledged before me on the __1st__ day of August, 2014 by Jay H. Krasoff.


MARLENE A. SCANLIN
MY COMMISSION EXPIRES
February 11, 2017

_Marlene Scanlin_
Notary Public, State of Texas

L:\BFORSHEY\Krasoff, Jay (CrR Congress Materials) #5707\Miscellaneous\Assignment of Claims--Bank of the Ozarks (7.30.14).doc

**Assignment of Claims and Causes of Action**                    **Page 8 of 8**



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
02/02/2015

| | | |
|---|---|---|
| In re: | § | CASE NO. 14-34031 |
| | § | |
| Chiron Equities, LLC | § | Chapter 7 |
| | § | |
| Debtor. | § | |

**ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**BY THE GOBSMACK GIFT TRUST**
[Resolves Docket No. 85]

Came on for consideration the Motion for Relief from Stay (the "Motion")[1] filed by the Gobsmack Gift Trust (the "Trust"). No responses or objections have been filed to the Motion, and the deadline for filing any such responses or objections has passed. The Court, having considered the Motion and having determined that it is unopposed, finds that good cause exists for granting the Motion.

Accordingly, it is hereby ORDERED that:

1.  The Motion is GRANTED.

2.  The automatic stay is hereby lifted to allow the Trust to reopen the Lawsuit[2] for the purpose of prosecuting its claims against Tauch to judgment; provided, however, that the Lawsuit shall be reopened for the sole purpose of prosecuting the claims against Tauch to judgment, and the Trust shall seek no relief against Chiron Equities, LLC (the "Debtor") other than to request the court to sever the claims pending against the Debtor so that the claims against Tauch may be pursued independently to final judgment.

3.  Except upon further order of the Court, as long as the Debtor's bankruptcy case remains pending, any liquidation or prosecution of the Trust's claim against the Debtor pending

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[2] As set forth in the Motion, the Lawsuit is styled as follows: *Bank of the Ozarks v. Chiron Equities, LLC, Kyle Tauch, and Lowery Walter McNeil*; Case No. 4:11-CV-334-JMM in the United States District Court for the Eastern District of Arkansas, Little Rock Division.

Case 4:14-cv-00394-JMV   Document 47   Filed 02/04/15   Page 24 of 24

in the Lawsuit shall be undertaken and adjudicated through this bankruptcy case and the claims allowance process.

　　4.　The provisions of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure are hereby waived, and the provisions of this Order shall be effective immediately upon its entry by the Court.

Signed this **2nd** day of February 2015.

**HONORABLE JEFF BOHM**
**UNITED STATES BANKRUPTCY JUDGE**